# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TOBIE L. AIRINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-61-FHS-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Tobie L. Airington requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 15, 1974, and was thirty-four years old at the time of the administrative hearing. (Tr. 38, 144, 149). She completed the twelfth grade and was certified as a licensed vocational nurse (Tr. 38, 166), and has worked as a licensed vocational nurse (Tr. 75). The claimant alleges that she has been unable to work since December 31, 2004 due to back injury, nerve pain in her hips and back, bipolar disorder, and asthma. (Tr. 144, 149, 159).

## Procedural History

On August 30, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 144-151). Her applications were denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 19, 2009. (Tr. 17-29). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she could lift/carry ten

pounds occasionally and frequently lift/carry up to ten pounds, stand/walk two hours in an eight-hour workday, and sit six hours of an eight-hour workday, with a sit/stand option at will. Additionally, the ALJ found the claimant could only occasionally stoop and crouch, and that she could understand and perform simple tasks, interact with others at a superficial level but not deal with the public on a regular basis, and adapt to a work situation. (Tr. 23). The ALJ concluded that although the claimant could not return to any past work, she was nevertheless not disabled, because there was work she could do in the national and regional economies, *e. g.*, assembler, bench hand, and table worker. (Tr. 28).

## Review

The claimant contends that the ALJ erred by (i) failing to properly evaluate the medical opinions of her treating physicians, specifically her treating neurologist Dr. Jose Matus; (ii) failing to properly assess her credibility; and (iii) failing to properly account for her asthma impairment at all steps. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate Dr. Matus's opinion, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant's severe impairments included degenerative joint disease of the cervical and lumbar spine and bipolar disorder. (Tr. 19). The claimant reported that she was hospitalized twice in 2000 for her bipolar disorder (Tr. 56), and that her doctors treated that with medication. The relevant medical evidence as to the claimant's physical impairments also reveals that the claimant experienced low back pain for a number of years, which was further exacerbated by an automobile

accident on July 25, 2004. (Tr. 356). Prior to the accident, a November 2002 MRI of the lumbar spine revealed mild disc height loss and degenerative disc changes at L4-5, and sacralization of L5 bilaterally. (Tr. 224). A May 3, 2004 MRI revealed that a central posterior disc bulge at L5-S1 was unchanged compared to prior examinations, that there was disc desiccation of L4-L5 without central spinal canal stenosis or neural foraminal encroachment, and that there was a small amount of fluid on the pelvis. (Tr. 228). On May 20, 2004, the claimant visited the emergency room at Medical Center of Southeastern Oklahoma, complaining of acute low back pain. (Tr. 308). Another MRI revealed no change from her previous scans. (Tr. 308). A June 15, 2007 MRI revealed a circumferential bulge at L4-L5 and L5-S1 with a small central protrusion at L5-S1; mild lower apophyseal joint degenerative changes; and no significant canal, neural foraminal, or nerve root abnormality. (Tr. 780).

The claimant was referred to a neurologist, Dr. Jose Matus, in May 2005. Following a physical examination and a nerve conduction study, Dr. Matus found no electrical evidence of radiculopathy, plexopathy, entrapment neuropath, or peripheral neuropathy involving both lower limbs. Following the nerve conduction study, Dr. Matus explained to the claimant that she was not a surgery candidate from a neurology point of view. He described the claimant as disabled, and also suggested that the claimant might benefit from trigger point injections in the lower lumbar area, as well as epidural injections. (Tr. 313-315). Medical records show that Dr. Matus consistently treated the claimant through at least December 2008, and reveal that he also treated the claimant for her severe chronic low back pain, bipolar disorder, and also fibromyalgia.

(Tr. 689). The claimant underwent trigger point injections, but those did not resolve the claimant's pain, and Dr. Matus noted that she was stable. (Tr. 778). On April 19, 2006, Dr. Matus wrote a "To Whom it May Concern" letter, stating that the claimant was unable to return to work and detailing her symptoms, diagnoses, and treatments. (Tr. 696). On July 26, 2006, Dr. Matus stated that the claimant was unable to return to work due to "persistent symptoms involving the lumbar area, headaches, and chronic pain syndrome and bipolar disorder." (Tr. 695). In January 2007, Dr. Matus noted he had prescribed a Duragesic patch for the claimant, to control her pain, which the claimant reported as helping some. (Tr. 689, 692). On December 18, 2008, Dr. Matus completed an assessment of the claimant's ability to do work activity, noting that the claimant could not complete an 8-hour workday, even with a sit/stand option; that she could perform grasping and manipulation, but no pushing or pulling. He then commented that the "[claimant] has a diagnosis of chronic pain syndrome secondary to fibromyalgia. She also has a history of bipolar disorder [with] anxiety. [Claimant] is considered totally and permanently disabled." (Tr. 769).

On July 16, 2006, Dr. Muhamad-Emad Amhan treated the claimant at the Amhan Pain Management Center in Sherman, Texas. (Tr. 365-366). He noted the claimant's conservative treatment of trigger point injections, and found the claimant's condition to be consistent with lumbar radiculitis, lumbar degenerative disc disease, and anxiety-depression disorder. (Tr. 366). He recommended surgery, and provided a list of neurosurgeons. (Tr. 366).

A state examiner, Dr. Carmen Bird, reviewed the claimant's record and completed a Physical RFC Assessment on March 12, 2007, concluding that the claimant had the RFC to perform the full range of light work. (Tr. 682-683).

At the administrative hearing, the claimant testified that she had scheduled back surgery for January 7, 2005, but had to cancel it when she found out that her insurance would not completely cover it. (Tr. 45). She further testified that her back problems cause her difficulty with bending over, pushing and pulling (ex: vacuuming), and standing too long. (Tr. 46-47). She also stated that she had to pay someone to help her clean at her house (Tr. 47), that she suffers migraines or cluster headaches, and that she spends most of her days "balancing [her] weight between a recliner and [her] bed." (Tr. 48-50). She stated that she should she was up only an hour to an hour and a half in an 8-hour day. (Tr. 55). As to her mental impairments, she testified that she takes medication for her bipolar disorder, but still sometimes experiences manic symptoms where she does not feel in control of herself. (Tr. 57). She testified that she was currently attempting to control her physical pain symptoms with medication and injections, but that her ultimate goal was surgery if she could afford it. (Tr. 61). As to her past employment, the claimant testified that she was fired from a nursing home for writing an order for an over-the-counter medication without a doctor's approval, but she also stated that she had already been reprimanded for missing too much work prior to that incident. (Tr. 68-69). The ALJ questioned the claimant as to why she did not have back surgery in 2005 when the records appear to show that she had a breast augmentation surgery that same year (July 2005). (Tr. 72-73, 460). The claimant responded that the breast surgery was a gift from

her separated husband, and was for reconstructive not enhancement purposes. Additionally, she stated that the back surgery was far more expensive than the breast surgery and that the money for the breast augmentation surgery "would not have made a dent" in the cost of the back surgery. (Tr. 72-74).

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley v. Barnhart*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*,

255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

The ALJ summarized the claimant's testimony, but stated that "[t]he overall record and objective medical evidence do not support the alleged severity of the claimant's symptoms and limitations due to her impairments." (Tr. 24). The ALJ noted the claimant's MRIs and 2005 scheduled back surgery, but found that because the claimant underwent breast augmentation surgery, she could have paid for the back surgery instead. (Tr. 24). The ALJ made no mention of the claimant's hearing testimony on this subject. The ALJ summarized parts of Dr. Matus's treatment notes, particularly whenever the claimant reported being well, stable, or being interested in participating in more physical activities. (Tr. 24-25). The ALJ also summarized Dr. Matus's RFC assessment, but found that it was "inconsistent with his own objective findings, as noted above, which show the claimant is not as limited as she alleged. . . . Accordingly, I give the opinions of Dr. Matus little weight." (Tr. 26). The ALJ then found the claimant capable of performing sedentary work with a sit/stand option and the above-mentioned additional postural limitations. (Tr. 27).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was unable to perform sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by

her treating physicians. Dr. Matus expressed such an opinion in his medical source statement (as well as in statements dating two years previously), and while the ALJ rejected them as inconsistent with other medical evidence, the ALJ failed to *specify* the inconsistencies to which he was referring. *See, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). Additionally, while the ALJ consistently noted every instance the claimant reported feeling better or that Dr. Matus characterized her as stable, he failed to mention, *inter alia*, Dr. Matus's 2005 and 2006 statements that the claimant was disabled. Although such statements go to an issue reserved to the commissioner, they cannot be disregarded, and the ALJ could not pick and choose the

evidence to rely upon. *Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("'[T]he [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 (indicating that an opinion on an issue reserved to the Commissioner is still evidence and cannot simply be disregarded). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). The ALJ failed to perform the proper analysis here.

Accordingly, the Commissioner's decision should be reversed and the case should be remanded to the ALJ for further analysis of the opinions of the claimant's treating physician. On remand, the ALJ should properly analyze *all* of the evidence, re-determine whether the claimant has any severe impairments, and if so, determine her RFC based on *all* impairments—severe *and* non-severe—and the work she can perform (if any) and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma